1

2

3

4

5

6

7        **IN THE UNITED STATES DISTRICT COURT**

8        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   JULIE ABSHER,                              Case No.  06-cv-1131 TAG

11              Plaintiff,              MEMORANDUM OPINION AND ORDER
                                        ON PLAINTIFF'S APPEAL FROM
12   _____vs.                          ADMINISTRATIVE DECISION

13   MICHAEL J. ASTRUE,                 ORDER DIRECTING THE CLERK TO
     Commissioner of Social Security,[1]  ENTER JUDGMENT FOR DEFENDANT
14   _____  MICHAEL J. ASTRUE AND AGAINST
                   Defendant.          PLAINTIFF JULIE ABSHER AND CLOSE
15   _____/  THIS CASE

16

17        Claimant Julie Absher ("Plaintiff" or "Claimant") seeks judicial review of an administrative

18   decision denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social

     Security Act ("the Act"), 42 U.S.C. § 1381 et seq.  Pending before the Court is Claimant's appeal
19
     from the administrative decision of the Commissioner of Social Security ("Commissioner").
20
     Claimant filed her complaint on August 15, 2006 (Doc. 1), and her opening brief on July 24, 2007.[2]
21
     (Doc. 19).  On August 23, 2007, the Commissioner filed an opposing brief, to which Claimant
22

23   _____

24        [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
     Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

25        [2]  Plaintiff refers to her opening brief as a motion for summary judgment, (Doc. 19), and her reply brief as a
     response to the Commissioner's cross-motion for summary judgment.  (Doc. 23).  Although briefs filed in Social Security
26   cases previously were deemed summary judgment motions, for several years this Court has termed the documents as
     "opening briefs," "responses" or "oppositions," and, "reply briefs."  This memorandum opinion and order continues the
27   more recent trend.

28                                                    1

1   replied on September 7, 2007.  (Docs. 22, 23).

2        Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented

3   to proceed before a United States Magistrate Judge, and, by an order dated January 15, 2007, this

4   action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 15).

5                                **JURISDICTION**

6        On July 8, 2003, Claimant protectively filed an SSI worksheet alleging an onset date of June

7   1, 1993.[3]  (AR ("Administrative  Record") 170-171).  On July 17, 2003, Claimant's SSI application,

8   signed and dated July 15, 2003, was filed.  (AR 172-175).  In her July 17, 2003 application, Claimant

9   alleged that she became disabled on June 1, 1998.  (AR 172).  Her application was denied initially

10  and on reconsideration.  (AR 142, 151, 155-158, 160-164).

11       After timely requesting a hearing, Claimant and her counsel appeared before Administrative

12  Law Judge ("ALJ") Bert Hoffman, Jr. on September 29, 2005.  (AR 165, 432-462).  On March 29,

13  2006, the ALJ issued a written decision (the "2006 decision") finding that Claimant was not disabled

14  for purposes of SSI.  (AR 10-18).  On June 14, 2006, the Appeals Council denied Claimant's request

15  for review.  (AR 6-8).  The Appeals Council's decision, therefore, became the final decision of the

16  Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  To initiate

17  an appeal in the district court, Claimant must file a complaint within 60 plus 5 days of the Appeals

18  Council's decision.  42 U.S.C. § 405(g); (AR 7).  On August 15, 2006, Claimant timely filed her

19  complaint.  (Doc. 1).

20                              **STATEMENT OF FACTS**

21       The facts have been presented in the administrative hearing transcripts, the ALJ's decisions,

22  and the briefs filed by Claimant and the Commissioner, and, therefore, only will be summarized

23  here.  In an earlier SSI application, Claimant alleged that she could not work because she suffered

24  from a heart condition, knee problems, and severe arthritis in her neck, shoulder, and spine.  (AR

25  ───────────────────────

26       [3]  Claimant previously applied for SSI in 1999.  (AR 61-65).  On March 13, 2001, after holding an
administrative hearing, the ALJ issued a decision finding that Claimant was capable of performing light work and, thus,
she was not disabled under the Social Security Act.  (AR 30-39, 463-482).  Claimant did not seek judicial review of the
27  2001 decision.  (See, e.g., AR 13, 175; Doc. 22, pp. 4-5).

28                                      2

76).  In the 2003 application at issue here, Claimant stated that she was disabled due to permanent nerve damage and dyspepsia, alleging an onset date of January 1998.  (AR 172).  Claimant added that she filed for SSI in 1999 and had a hearing in 2001, but had not been able to work since then due to her various conditions, disabilities, and diseases.  (AR 175).

Claimant and her attorney were present at the 2005 hearing.  (AR 432).  Claimant testified that she was born on February 7, 1958, making her 48 years old on the date of the ALJ's 2006 decision and 39 years old on her 1998 onset date.  (AR 435).  Claimant stated that she went to school through the twelfth grade, and had worked on and off for the past 15 years.  (Id.).  Claimant further reported that she lives alone in her mother's rental home.  (AR 447).

With respect to Claimant's work history, Claimant testified that her most recent job lasted two months and involved  babysitting five days per week for her daughter's two- and eight- year old children in the winter of 2005.  Claimant testified that she could not pick up the 30 pound toddler as often as he wanted, but that she was able to drive to the older girl's school.  (AR  435-439). According to Claimant, her daughter decided to place the children in daycare after realizing that Claimant's physical ailments rendered the babysitting tasks too difficult for Claimant to perform. (AR 439).  Claimant testified that, before the babysitting job, she worked in 1994 or 1995 as a part- time bank vault teller for four hours per day.  (AR 440-441).  Claimant quit the bank job because it was stressful and she started to feel left-sided tingling , numbness, and chronic pain.  (AR 441). Claimant testified that she would be able to find employment, but the job would not last because her chronic pain and medical problems, as well as the stress involved, would prevent her from attending work more than two days per week.  (AR 451, 458-459).

Regarding her health problems, Claimant testified that initially the doctors diagnosed her as suffering from cervical spine disease with narrowing of the spine, which they treated with medication and  "a little bit of therapy."  (AR 442).  Claimant stated that her condition had worsened since her last administrative hearing in that sometimes she feels numb on her left side from her neck past her knee.  (AR 444).  Claimant explained that she recently was referred for a neurosurgical consult because she started having seizures that caused her to feel "things" on the left side of her

head and scalp.  (AR 442-444).  She testified that the consultant suggested surgery, and she was waiting to hear from him.  (AR 442-443).  Claimant further testified that she suffers weakness on her left side and, although she is right-handed, she has problems using her arm and hand and occasionally drops things.  (AR 445).  She also suffers intense, throbbing pain that causes her left side to knot up, at which times she feels as though she cannot breathe.  (Id.).  Claimant added that she regularly takes medication that helps, but, in general, it does not alleviate the left side knotting.  (AR 445-446).  She testified that her level of pain is as low as four on the one or two days per week when the medication works, adding that her pain level currently was an eight.  (AR 453-454).  Claimant further reported that, when she had a "bad" day, she often took more pain pills than prescribed.  (AR 456-457).

When asked about a psychologist's report that Claimant abused alcohol, Claimant denied it, stating that she occasionally drank socially, but did not get "wasted."  (AR 451-452).  She admitted that, if she had the money, she would use alcohol to self-medicate and likely would become an alcoholic.  (AR 452).  Claimant also admitted that she had tried methamphetamine when she was in her early twenties, but had not taken any illegal drugs since then.  (AR 453).

As to her daily activities and self-assessed exertional capacity, Claimant testified that she is able to care for her personal and hygienic needs.  (AR 446).  She further testified that she makes her bed, does the laundry, and shops for groceries.  (AR 447-448).  Claimant stated that she can drive, but she has no vehicle.  (AR 448).  Claimant testified that her only activities away from home involved visiting her mother and her children, and occasionally babysitting for her grandchildren.  (AR 449).  She acknowledged that she was in a long-term relationship with a man, with whom she went driving, drinking, and noted that she occasionally stayed at his Tehachapi home.  (AR 449-451).  Claimant assessed her ability to stay focused as "not very good."  (AR 458).

Claimant's attorney made a closing statement in which he noted that there were minimal records suggesting that Claimant abused alcoholic and he emphasized the severity of Claimant's cervical degenerative joint disease.  (AR 460-461).  The ALJ questioned Claimant about the possibility of future neurosurgical treatment, and she responded that she had an appointment with the

1   neurosurgeon on October 16, and would consider surgery if it was recommended.  (AR 461).  The

2   ALJ kept the record open to enable receipt of the neurosurgeon's subsequent report, which report is

3   not included in the record.  (AR 461-462).

4                          **RELEVANT LEGAL FRAMEWORK**

5          To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be

6   "unable to engage in any substantial gainful activity by reason of any medically determinable

7   physical or mental impairment which can be expected to result in death or which has lasted or can be

8   expected to last for a continuous period of not less than twelve months."  42 U.S.C.§ 1382c(a)(3)(A).

9   The Act also provides that a claimant shall be determined to be under a disability only if his

10  impairments are of such severity that he "is not only unable to do his previous work but cannot,

11  considering his age, education, and work experience, engage in any other substantial gainful work

12  which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

13                             **STANDARD OF REVIEW**

14         Congress has provided a limited scope of judicial review of a Commissioner's decision.  See

15  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

16  the determination is not based on legal error and is supported by substantial evidence.  See Ukolov v.

17  Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(citations omitted); Jones v. Heckler, 760 F.2d 993,

18  995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 510 (9th Cir.

19  1987).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the

20  findings of fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th

21  Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson

22  v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister

23  v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human

24  Servs., 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a

25  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

26  389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may

27  reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293

28                                          5

(9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence

supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989)

(quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).  It is the role of the trier of fact, not

this Court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more

than one rational interpretation, the Court must uphold the decision of the ALJ.  Allen v. Heckler,

749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the

administrative findings, or if there is conflicting evidence that will support a finding of either

disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812

F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence

still will be set aside if the proper legal standards were not applied in weighing the evidence and

making the decision.  Brawner v. Secretary of Health and Human Servs., 839 F.2d 432, 433 (9th Cir.

1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining

whether a person is disabled under Title XVI of the Act.  20 C.F.R. § 416.920.  Step one determines

whether the claimant is engaged in substantial gainful activities.  If he is, benefits are denied.

20 C.F.R.  § 416.920(a)(4)(i), (b).  If he is not, the decision maker proceeds to step two, which

determines whether the claimant has a medically severe impairment or combination of impairments

that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are

expected to result in death, or continuously lasted or be expected to last at least twelve months.

20 C.F.R. § 416.920(a)(4)(ii), (c).  If the claimant does not have a severe impairment, a combination

of impairments, or meet the duration requirement, the disability claim is denied.  Id.

If the impairment is severe, the evaluation proceeds to the third step, which compares the

claimant's impairment with a number of listed impairments acknowledged by the Commissioner to

be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), (d); 20

C.F.R. Pt. 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments

and satisfies the duration requirement, the claimant is conclusively presumed to be disabled.

20 C.F.R. §§ 416.909, 416.920(a)(4)(iii), (d).  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past.  If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).

The initial burden of proof rests upon a claimant to establish that he "is entitled to the benefits claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted).  In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ADMINISTRATIVE FINDINGS**

In his March 29, 2006 decision, ALJ Hoffman noted that, in a March 13, 2001 hearing decision, the ALJ had determined that Claimant retained the residual functional capacity ("RFC") to perform light work and found that she was not disabled.  (AR 13).  Because that 2001 hearing was not further adjudicated, ALJ Hoffman concluded that he had to comply with Acquiescence Ruling ("AR") 97-4(9), which provides that a presumption of continuing nondisability applies unless the Claimant  rebuts the presumption by showing "changed circumstances," such as a worsening of her condition, the development of an impairment not previously considered, or a change in her age

7

1   category.[4]  (Id.).  ALJ Hoffman subsequently noted that Claimant had not rebutted the presumption

2   of continuing nondisability during the unadjudicated period commencing on March 14, 2001 and

3   ending on March 29, 2006.  (Id.)  Thus, he concluded that the March 13, 2001 decision was res

4   judicata.[5]  (Id.).

5          The ALJ then engaged in the sequential evaluation procedure and found, at step one, that

6   Claimant had not engaged in any substantial gainful activity during any time relevant to his decision.

7   (AR 15).  At step two, ALJ Hoffman found that Claimant suffered from degenerative disc disease of

8   the cervical spine, which he considered a severe impairment.  (Id.).  The ALJ acknowledged that

9   Claimant had depression, but found that it was a slight impairment that would cause minimal, if any,

10  effect on her ability to work.  (Id.).  At step three, he found that Claimant did not have an impairment

11  or combination of impairments that met or medically equaled any of the impairments listed in

12  20 C.F.R. Pt. 404, Subpt. P, App. 1.  (AR 15-16).

13         Before making his step four finding, the ALJ concluded that he had to determine Claimant's

14  RFC.  (AR 14-15).  Based on the ALJ's credibility findings with respect to the assessments

15  propounded by several physicians over a period of time, ALJ Hoffman determined that Claimant

16  retained the RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, and could sit, stand,

17  and/or walk 6 hours in an 8-hour workday.  (AR 16-17; see AR 234-239, 363, 365-374, 424-431).

18  The ALJ also imposed a nonexertional limitation preventing Claimant from engaging in frequent

19  overhead reaching.  (AR 16).

20         In determining Claimant's RFC, the ALJ stated that he found Claimant's testimony less than

21  credible in that, while her impairments could produce the symptoms about which she complained,

22  the record as a whole did not support Claimant's allegations concerning the intensity, duration, and

23  ///

24  _____

25         [4] Acquiescence Rulings "are binding on all components of the Social Security Administration," and accorded

26  deference by a reviewing court. 20 C.F.R. § 402.35(b); McNabb v. Barnhart 340 F.3d 943, 944 (9th Cir. 2003).

27         [5] See Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988) for this Circuit's discussion of the presumption of non-disability and res judicata, which prompted the Social Security Administration to enact AR 97-4(9).

28

1   limiting effects of her symptoms.  (Id.).  The ALJ also discussed the various record evidence that he

2   believed demonstrated that Claimant's impairments were not as severe as she alleged.  (See generally

3   AR 15-17).

4          At step four, the ALJ found that Claimant had no past relevant work.  (AR 17).  The ALJ

5   noted that Claimant was 39 years' old on her alleged onset date, and that she had a 12th grade

6   education and could communicate in English.  (Id.).  At step five, ALJ Hoffman, relying on

7   20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") and 20 C.F.R. § 416.966, ascertained that there

8   existed a significant number of jobs in the national economy that Claimant could perform.  (Id.).

9   The ALJ found that, pursuant to Table 2, Rule 202.20 of the Grids, Claimant was not disabled

10  because she retained the RFC to perform the full range of light work and her additional,

11  nonexertional limitations would impose minimal or no effect on her ability to engage in unskilled

12  light work.  (AR 18).  Accordingly, ALJ Hoffman concluded that Claimant did not suffer a disability

13  and, therefore, was not eligible for SSI payments.  (Id.).

14                                            **ISSUES**

15         Claimant raises the following issues for consideration in her opening brief:

16         A.  The ALJ improperly assessed Claimant's medical records;

17         B.  The ALJ erroneously discounted Claimant's pain testimony; and

18         C.  The ALJ failed to meet his Step Five burden by relying on the Grids.

19         As discussed above, this Court must uphold the Commissioner's determination that a

20  claimant is not disabled if the Commissioner applied the proper legal standards and there is

21  substantial evidence in the record as a whole to support the decision.

22                                          **DISCUSSION**

23  **A.  Assessment of Claimant's Medical Records**

24         Claimant asserts that the ALJ did not properly evaluate her medical records when he

25  determined that she failed to rebut the presumption of continuous nondisability, and argues that there

26  were many records that revealed the severity of her impairments but were not available when the

27  2001 decision was issued.  Claimant details and compares the differences between her pre- and post-

28                                                9

1  2001 medical records, asserting that the more recent records demonstrate that her condition had

2  worsened to the extent that she rebutted the presumption of continuous nondisability and, therefore,

3  the ALJ cannot rely on the previous findings and should conclude that she now is disabled.

4  Specifically, Claimant avers that her limitation with respect to overhead reaching, as reported by the

5  examining consultants, the state agency physician, and the ALJ, rebuts the finding in the

6  unadjudicated 2001 decision that she could perform the full range of light work.  Claimant  further

7  asserts that the ALJ failed to explain the medical records upon which he relied in ascertaining her

8  current condition or explain why he relied on the state physician's RFC assessment instead of the

9  opinions of examining consultants Drs. Juliane Tran and Emanuel Dozier.

10        In his March 29, 2006 decision, ALJ Hoffman noted that the March 13, 2001 hearing

11  decision found that Claimant retained the RFC to perform the full range of light work and was not

12  disabled, and that Claimant did not appeal the decision.  (AP 13).  The ALJ also determined that the

13  unadjudicated period commenced March 14, 2001 and ended on March 29, 2006,  found that

14  Claimant failed to present any new or material evidence warranting a significant change  in her RFC,

15  and applied the presumption of continuing nondisability to that period.  (Id.)

16        Although Claimant contends that the ALJ failed to consider Claimant's  recent medical

17  condition, the ALJ addressed in detail the results of a 2003 x-ray and a 2004 MRI of Claimant's

18  cervical spine, upon which he relied to find that Claimant's spinal degenerative disc disease was

19  severe. (AR 14; see AR 336, 375).  The ALJ also discussed the report of consulting psychologist

20  Dr. John K. Zhang, Psy.D., who examined Claimant on October 8, 2003. (AR 14-15).  Dr. Zhang

21  diagnosed Claimant as suffering from mild depression and alcohol abuse, noted that she had been

22  non-compliant with psychotropic medications in the past, and opined that Claimant's depression

23  would only minimally affect her ability to work and, with treatment, her prognosis was good.  (AR

24  240-243).  ALJ Hoffman then referenced several of Claimant's medical and treatment reports, noting

25  that (1) she was treated twice for gastroesophegul reflux disease, (2) she had an x-ray of her right

26

27

28                                                    10

1   knee and an EEG,[6] both of which were normal, and (3) she was diagnosed with cervical radiculitis

2   and approved for surgery, but did not keep her follow-up appointment, thereby belying her

3   contention that he had not considered her recent medical records.  (AR 16-17; see AR 269, 271, 319,

4   362, 415-416).  The ALJ properly considered Claimant's medical records.  The only remaining

5   issues therefore, are whether Claimant rebutted the presumption of continuing nondisability and

6   whether the ALJ erroneously relied on the opinion of the state agency physician.

7   Presumption of Continuing Nondisability

8         An administrative decision denying disability benefits that the claimant does not appeal

9   operates as res judicata as to the finding of nondisability through the date of the prior decision.

10  Although applied less rigidly to administrative than to judicial proceedings, the principles of res

11  judicata apply to administrative decisions.  Chavez, 844 F.2d at 693; Gregory v. Bowen, 844 F.2d

12  664, 666 (9th Cir. 1988).

13        This binding determination of nondisability creates a presumption of continuing nondisability

14  with respect to the period after the date of the prior decision.  See Lester v. Chater, 81 F.3d 821, 827

15  (9th Cir. 1995); Miller v. Heckler,770 F.2d 845, 848 (9th Cir. 1985); Lyle v. Secretary of Health &

16  Human Servs., 700 F.2d 566, 568-569 (9th Cir. 1983). The presumption does not apply, however, if

17  there are "changed circumstances."  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).  Thus, the

18  presumption may be overcome by a showing of "changed circumstances," such as new and material

19  changes to the claimant's RFC, age, education, or work experience.  Lester, 81 F.3d at 827-828 (9th

20  Cir. 1995); Chavez, 844 F.2d at 693; Lyle, 700 F.2d at 568 n.2.  Accordingly, res judicata does not

21  apply when the claimant raises an issue not considered in the previous decision, such as the existence

22  of a new impairment, or demonstrates an increase in the severity of an impairment, either one of

23  which adversely affects his RFC.  Lester, 81 F.3d at 827 (citations omitted).  Nor is it applicable

24  when a change in the claimant's circumstances constitutes a categorical change under the Grids, such

25  as a change in claimant's age category.  Id., citing Chavez, 844 F.3d at 693; see also AR 97-4(9).

26  

27         [6] The ALJ mistakenly refers to the test as an ECG.  (AR 16, 271).

28                                                    11

1    A claimant's RFC is "what she can still do despite her physical, mental, nonexertional, and

2  other limitations."  Burger v. Astrue, 2008 WL 576335, *4 (C.D.Cal. 2008), citing Mayes v.

3  Massanari, 276 F.3d 453, 460 (9th Cir. 2001) and Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th

4  Cir. 1989); 20 C.F.R. § 416.945(a)(1); SSR 96-8p.  When determining a claimant's RFC, the ALJ

5  considers, inter alia, the individual's physical abilities and limitations, then ascertains the

6  individual's RFC to perform work on a regular basis.  20 C.F.R. § 416.945(a)(4) and (a)(5)(ii)(b).

7  "A limited ability to perform certain physical demands of work activity, such as sitting, standing,

8  walking, lifting, carrying . . . or reaching . . . may reduce your ability to do past work and other

9  work."  20 C.F.R. § 416.945(a)(5)(ii)(b).

10    In the March 13, 2001unadjudicated decision, the ALJ found that Claimant retained the RFC

11  to perform the full range of light work, which involved occasionally lifting 20 pounds, frequently

12  lifting and carrying 10 pounds, standing and walking 6 hours in an 8-hour day, and/or sitting for 6

13  hours in an 8- hour day.  20 C.F.R. § 416.967(b); (AR 135, 138).  In contrast, ALJ Hoffman

14  determined, based on the opinions of non-treating physicians, that, in addition to the 2001 RFC,

15  Claimant was limited with respect to frequent overhead reaching.  (AR 16).  By including in

16  Claimant's RFC this nonexertional reaching limitation, ALJ Hoffman arguably found Claimant's

17  impairment had become more severe.  (AR 16, 138; see AR 367, 428, 431).  After reviewing the

18  medical records of Claimant's treating physicians and others, including the objective findings of two

19  consultative physicians, and the state agency reviewing physicians, ALJ Hoffman determined that

20  Claimant's additional nonexertional restriction did not affect her ability to perform light, unskilled

21  work on a regular basis.  (AR 16-17).

22    In order to show changed circumstances, the evidence must establish that Claimant suffers

23  from an impairment that indicates a greater disability.  Chavez, 844 F.2d at 693; 20 C.F.R.

24  § 416.945(a)(4) and (a)(5)(ii)(b); (AR 16); (see Section C, below).  New or more severe existing

25  impairments that do not adversely affect the claimant's RFC, do not constitute a greater disability.

26  Lester, 81 F.3d at 827.  Here, the medical records fail to establish any new or more severe existing

27  impairments that adversely affect Claimant's RFC.  Claimant's additional overhead reach limitation

28                                         12

1   is not the consequence of an impairment that precludes her from performing light unskilled work.

2   Additionally, there is no evidence of new or material changes to Claimant's age, education, or work

3   experience, or any other categorical change under the Medical-Vocational Guidelines ("Grids").

4   Accordingly, the Court finds no error in the ALJ's analysis of the presumption of continuing

5   nondisability with respect to Claimant's July 8, 2003 application and the unadjudicated period.

6   Opinion of State Agency Physician

7          Claimant asserts that ALJ Hoffman erroneously relied on the January 27, 2004 opinion of a

8   state agency physician and rejected the objective medical records and the reports of examining

9   consultants Drs. Dozier and Tran.  (Doc. 19, pp. 8-9).  Claimant further contends that the ALJ failed

10  to provided an adequate reason for accepting the nonexamining state physician's opinion over those

11  of the examining doctors.  (Id. at p. 9).  Because, in his decision, ALJ Hoffman did not state that he

12  relied on any of the opinions that he addressed – those of Drs. Dozier, Tran, or the state agency

13  physician – but, instead, Claimant assumed that the ALJ relied on the opinion of the state agency

14  after observing that it was consistent with ALJ Hoffman's findings, there can be no error.  (AR 17;

15  Doc. 19, p. 8).  Moreover, to the extent that there may be error, it would be harmless because the

16  ALJ concluded, as did all of the opinions he cited, that Claimant was restricted with respect to

17  reaching.  Batson v. Comm'r Soc. Sec., 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error

18  harmless where it did not negate the validity of the ALJ's ultimate conclusion); (see AR 16-17, 239,

19  365-369, 427-431).

20  **B.  Claimant's Credibility**

21          Claimant contends that the ALJ erroneously discredited her pain testimony and her resulting

22  limitations based on reasons such as the lack of (1) objective medical records reporting that she

23  could not work, (2) diagnostic test results revealing that she suffered severe problems, (3) aggressive

24  treatment for her pain, and, in addition, because Plaintiff failed to follow-up on various

25  consultations.  (Doc. 19, pp. 9-10; AR 16-17; see generally AR 439-459).  Claimant asserts that,

26  because she did not have the luxury of always being treated by the same physician within the County

27  medical system, she could not obtain a treating physician's opinion addressing the extent of her

28

13

1   impairments.  (Doc. 19, p, 10).  She further contends that, although the ALJ correctly observed that

2   she has had only conservative treatment to date, she was awaiting a neurosurgical operation.  (Id.).

3   Claimant  also asserts that the ALJ misunderstood record notations indicating that she did not need

4   assistance with her daily chores as evidence that she was capable of caring for herself and household

5   chores when, in fact, the notations were intended to convey to social workers that she did not need

6   assistance with her daily chores because she received such help from her family and other people.

7   (Id. at 10-11).

8       Finally, Claimant asserts that the ALJ erroneously discounted her testimony under Smolen v.

9   Chater, 80 F.3d 1273 (9th Cir. 1996), which mandates that an ALJ cannot reject a claimant's

10  testimony regarding severe symptoms without setting forth specific findings stating clear and

11  convincing reasons for doing so when there is evidence that the claimant has an underlying

12  impairment, and there is no indication that the claimant is malingering.  (Doc. 19, p. 11).  Because

13  Claimant has satisfied the Smolen requirement, and the ALJ failed to provide the specific findings to

14  reject her testimony, Claimant asserts that the ALJ's finding must be reversed.  (Id.).

15      A two step analysis applies at the administrative level when considering a claimant's

16  subjective credibility.  Smolen, 80 F.3d at 1281.  First, the claimant must produce objective medical

17  evidence of an impairment and show that the impairment could reasonably be expected to produce

18  some degree of symptom.  Id. at 1281-82.  Pursuant to SSR 96-7p, however, the ALJ may not

19  disregard the claimant's pain testimony only because there is a lack of medical records evidencing an

20  impairment that causes pain.  SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

21  1997).  Nonetheless, if there is no evidence that the claimant is malingering, the ALJ can reject the

22  claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and

23  convincing reasons for doing so."  Smolen, 80 F.3d at 1281.  This level of specificity is crucial

24  because, in its absence, effective judicial review may not be possible.  See Mersman v. Halter, 161 F.

25  Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why

26  Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the

27  ///

28          14

ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

The Ninth Circuit has long held that, when a claimant testifies about disabling pain, but does not seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's pain testimony is "unjustified or exaggerated." Orn v. Astrue, 495 F.3d 625, 638 (2007). This Court further notes that there are any number of clear and specific findings that the ALJ can make, many of which are identified in SSR 96-7p. Such findings include: (1) whether "the level or frequency of treatment is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether "the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," id., (3) the consistency of statements made by the claimant to physicians, to those deciding benefits under other programs (e.g., workers' compensation), and to the Social Security Administration itself, while recognizing that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and [that] this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." Id. Each of these and other potential findings are fact-specific, precisely the province of the ALJ. Some other ALJ findings, as identified in reported cases, are illustrative and demonstrate the many ways in which ALJs can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted by the fact that her hair reached well below her shoulders at the administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's testimony that she had never undergone physical therapy was contradicted by medical records indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility regarding her assertion that her disability precluded work, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian, "'presenting conflicting information about her drug and alcohol usage,'" id., (5)

15

the same ALJ also found that claimant's efforts to impede accurate testing of her limitations argued

strongly against her credibility, id., (6) an ALJ found that claimant had been uncooperative during

consultative examinations, and illustrated that finding with a specific statement by a physician

regarding claimant's "'poor effort,'" Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7)

the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific

comment by a physician that claimant was deficient during cognitive testing but "'much better'"

when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions

were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his

report about the lack of objective evidence to support claimant's complaints of pain and weakness,'"

Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and

recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz

v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998) and (10) the same ALJ found that

claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id.

at 1049.  For a brief synopsis of factors that can form a basis for ALJ credibility findings, see Light,

119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies

either in his testimony or between his testimony and his conduct, his daily activities, his work record,

and testimony from physicians and third parties concerning the nature, severity, and effect of the

symptoms of which he complains").

In the instant case, the ALJ noted that Claimant had medical ailments that could cause her to

suffer the pain that she alleged, but provided multiple, specific, and clear reasons for discounting the

intensity and degree of the pain along with Claimant's overall testimony.  Smolen, 80 F.3d at 1281;

(AR 15-17).  ALJ Hoffman referenced incidents evidencing Claimant's failure to comply with

treatment, including her refusal to continue taking prescribed psychotropic medication for her

depression and her failure to keep an appointment with her neurosurgeon to discuss cervical disc

surgery to alleviate her spinal pain.  (AR 15, 17; see AR 242, 415).  The ALJ also noted that

Claimant lived alone, took care of her personal needs, shopped for groceries, and socialized with her

mother, her boyfriend, and her children or grandchildren.  (AR 16).  Confirming her ability to care

16

for herself, the medical records repeatedly note that Claimant had no problems with the activities of daily living or walking.  (Id.; see, e.g. AR 245, 262).  Further, the ALJ found that Claimant did not suffer as much pain as she alleged because she was treated only with medicine, rather than placed on a more aggressive pain treatment plan, yet she still managed to function on a daily basis.  (AR 16).  Moreover, to the extent not previously mentioned, virtually all of Claimant contentions are belied in the record.  (Doc. 19, pp. 9-10).  For example, there are no medical records indicating that Claimant is incapable of working.  (See generally AR 245-362, 375-423).

Based on the foregoing, the ALJ provided multiple reasons, based on the medical records, Plaintiff's daily activities, and inconsistencies between her averments and testimony and the records, to support his conclusion that Plaintiff's testimony was not wholly credible.  Accordingly, the ALJ did not err in discounting Plaintiff's testimony given the medical record and the hearing transcript.

**C. Step Five Burden**

Claimant argues that, pursuant to SSR 85-15, a limitation on overhead, or upper extremity reaching, may eliminate a significant number of jobs otherwise available to the claimant.  (Doc. 19, pp. 11-12).  Claimant therefore avers that the ALJ erred in using the Grids to meet the Commissioner's burden at Step Five, necessitating that her case be reversed.  (Id. at 12).

After a claimant has established a prima facie case of disability by demonstrating he cannot return to his past relevant work, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite his limitations.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  The ALJ can satisfy this burden either by (1) relying on the Grids at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which "constitute administrative notice of the existence of jobs for persons with specified limitations," or (2) taking the testimony of a vocational expert.  Tackett v. Apfel, 180 F.3d 1094, 1098-1099 (9th Cir. 1999); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

The ALJ generally may rely on the Grids only when considering claimants with the same, basic levels of impairment; that is, when the "claimant's functional limitations fall into a standardized pattern "accurately and completely" described by the grids."  Tackett, 180 F.3d at 1103

1   (citation omitted); <u>Burkhart</u>, 856 F.2d at 1340 (citation omitted).  Accordingly, the use of the Grids is

2   not always proper.  <u>Burkhart</u>, 856 F.2d at 1340 (citation omitted).  If a claimant has nonexertional

3   limitations[7] that significantly limit his range of work, the use of the Grids in determining disability is

4   inappropriate.  <u>Tackett</u>, 180 F.3d at 1102.  In such instances, a vocational expert must be called to

5   identify jobs that match the abilities of the claimant, given his limitations.  <u>Id.</u>  Nevertheless, if an

6   ALJ determines that a claimant's nonexertional limitations do not significantly affect his ability to

7   perform a full range of work, then use of the Grids is appropriate.  <u>Id.</u> at 1101; <u>see</u> <u>also</u> <u>Razey v.</u>

8   <u>Heckler</u>, 785 F.2d 1426, 1430 (9th Cir. 1986), <u>as</u> <u>amended</u>, 794 F.2d 1348 (where there is substantial

9   evidence supporting the ALJ's conclusion that a claimant's anxiety disorder would not prevent him

10  from performing work that he physically was able to do, use of the grids was appropriate).

11         Under Social Security Ruling ("SSR") 85-15, the nonexertional ability to reach has a

12  progressively adverse effects on the number of available jobs as the exertional and skill level

13  decreases.  SSR 85-15.[8]  According to SSR 85-15, the testimony of a vocational expert may be

14  necessary to ascertain the number of jobs available when a claimant is capable of performing

15  sedentary or light unskilled work, but has significant limitations on various manipulative restrictions,

16  including reaching.  <u>Id.</u>

17         Here the ALJ noted that, if Claimant had no nonexertional limitations, her RFC, age,

18  education, and work history would have directed a finding of "not disabled" under Rule 202.20.  20

19  C.F.R., Pt. 404, Subpt. P, App. 2, Table 2, § 202.20; (AR 18).  Upon finding that Claimant's

20  nonexertional limitations had little or no effect on her ability to perform unskilled light work, ALJ

21  Hoffman found that, pursuant to Rule 202.20, Claimant was not disabled.  (<u>Id.</u>).  The ALJ's

22  conclusion that Claimant's nonexertional restriction would not significantly affect her ability to

23  _____

24         [7]  Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an
   individual's physical strength."  Soc. Sec. Rul. 96-8. <u>See</u> <u>also</u> <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d

25  573, 579 (9th Cir. 1988); 20 C.F.R. § 404.1569a; 20 C.F.R. Pt. 404 , Subpt. P, App. 2, § 200.00(d), (e).

26         [8]  Although not binding on federal courts, deference is accorded to Social Security Rulings, which represent the
   Social Security Administration's interpretation of its law, absent a finding that the Rulings are erroneous or inconsistent
   with the Act or the regulations.  <u>Chavez v. Dep't of Health and Human Servs.</u>, 103 F.3d 849, 851 (9th Cir. 1996) (citing

27  <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir.1989)).

28
                                          18

1    engage in light, unskilled work is support by the experts' opinions and the records in general.  (See,

2    e.g. AR 239, 243; see generally AR 245-362, 375-423).  The ALJ, therefore, did not err in using the

3    Grids as a framework to find that Claimant was not disabled.  Tackett, 180 F.3d at 1101; Razey, 785

4    F.2d at 1430, as amended, 794 F.2d 1348; 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 202.20; (AR 18).

5        The Court finds no error in the ALJ's conclusion that Claimant's nonexertional limitation to

6    occasional reaching does not prevent her from performing virtually the entire range of light work.

7    As noted above, the finding with respect to Claimant's nonexertional restrictions permits the ALJ to

8    use the Grids.  Tackett, 180 F.3d at 1101.  Using Grid Rule 202.20 as a framework, the ALJ

9    determined that, based on Claimant's ability to perform work at the light level, the fact that her

10   nonexertional limitations did not significantly compromise her ability to perform work at this level,

11   and given her age and education,  Claimant could perform a significant number of jobs available in

12   the national economy and, accordingly, was not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table

13   2, § 202.20; (AR 18).

14       Since the ALJ found that Claimant could perform the physical and mental demands of the

15   jobs administratively noticed under the Grids, it was not necessary for him to call a vocational

16   expert.  As noted above, if nonexertional limitations "significantly" affect a claimant's ability to

17   perform work, then vocational expert testimony is required.  Tackett, 180 F.3d at 1102; SSR 85-15.

18   Because the ALJ in this case determined, based on the evidence, that Claimant's nonexertional

19   limitations did not "significantly compromise" her ability to perform work, the use of the Grids by

20   the ALJ was entirely appropriate.  Therefore, the undersigned concludes that the ALJ did not err by

21   failing to elicit testimony from a vocational expert.  The ALJ's use of the Grids as a framework to

22   find Claimant not disabled was proper in this case.

23                              **CONCLUSION**

24       For the reasons discussed above, this Court finds no error in the ALJ's analysis, which was

25   based on proper legal standards.  Accordingly, this Court ORDERS:

26       1.     That Claimant's Social Security complaint is DENIED; and

27   ///

28                              19

1          2.      That the Clerk of the Court is DIRECTED TO ENTER judgment for Defendant

2     Michael J. Astrue and against Claimant Julie Absher and close this case.

3

4     IT IS SO ORDERED.

5     Dated:   **March 27, 2008**                                    **/s/ Theresa A. Goldner**
                                                          UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              20